UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANAE SNOWDEN,<br><br>        Plaintiff,<br><br>    v.<br><br>COUNTY OF VALAVERAS, et al.,<br><br>        Defendants. | No. 1:18-cv-01595-DAD-SAB<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS<br><br>(Doc. No. 13) |

This matter is before the court on a motion to dismiss plaintiff's first amended complaint ("FAC") filed by defendants County of Calaveras (the "County"), Sabrina Cable, Josh Crabtree, and Peter Maurer (collectively, "defendants"). (Doc. No. 13.) A hearing on the motion was held on May 7, 2019. Attorney Kenneth M. Foley appeared telephonically on behalf of plaintiff Ranae Snowden ("plaintiff"). Attorney Andrew T. Caulfield appeared on behalf of defendants. The court has considered the parties' briefs and oral arguments, and for the reasons set forth below, will grant defendants' motion to dismiss without leave to amend.

**BACKGROUND**

Plaintiff's FAC alleges as follows. At all relevant times, plaintiff and her husband Steve Snowden ("Steve") (collectively, the "Snowdens") owned real properly located at 1400 Vineyard Terrace, Murphys, California 95247 (the "Property"). (Doc. No. 9 ("FAC") at ¶ 1.) On May 10, 2016, the County passed an emergency ordinance permitting commercial cultivation of

1

marijuana. (*Id.* at ¶ 9.) On June 30, 2016, plaintiff went to a Calaveras County Planning Department (the "Planning Department") meeting to register for a permit to commercially cultivate marijuana. (*Id.* at ¶ 10.) At that meeting, a deputy sheriff told her to write her name and contact information on a piece of paper and that "she would be contacted." (*Id.*) Plaintiff so obliged. (*Id.*)

On April 24, 2017, Steve inquired about the status of plaintiff's and his registration and spoke with defendant Maurer, the Planning Department's director. (*Id.* at ¶¶ 12, 13.) On April 26, 2017, Maurer responded to Steve via letter[1], noting that, "[o]n April 24, 2017, you tried to submit a Commercial Cannabis Cultivation Registration application . . . . At that time, I rejected the application because the submittal deadline . . . expired on June 30, 2016." (*See* FAC at Ex. 2.) The letter advised the Snowdens of their right to appeal the decision to the Planning Commission, which they did. (*Id.* at Ex. 2; *see also id.* at ¶ 14.) On June 8, 2017, the Planning Commission denied the Snowdens' appeal of their application rejection. (*Id.* at ¶ 15.) The Snowdens then appealed to the County Board of Supervisors (the "Board") and a hearing before the Board was set for August 22, 2017. (*Id.* at ¶¶ 15, 16.) One day before the scheduled hearing, counsel for the Snowdens filed a motion to continue the hearing on appeal due to a conflict in his schedule. (*Id.* at ¶ 16.) At the August 22, 2017 hearing, the Board denied the Snowdens' motion to continue and denied their appeal, noting that "[t]he registration was submitted on April 24, 2017" and that "[c]ommercial cannabis cultivators who fail[ed] to register prior to June 30, 2016, [are] precluded from applying for a registration, permit, license or other form of approval authorizing commercial cultivation." (*Id.* at ¶ 18; *see also id.* at Ex. 5.)

On September 13, 2017, plaintiff filed a petition for writ of mandate with the Calaveras County Superior Court (the "superior court"). (*Id.* at ¶ 19; *see also id.* at Ex. 6.). Therein,

---

[1] Attached to plaintiffs' FAC are several exhibits, including correspondences between plaintiff and the County, notices and orders from the County, and filings in and orders from the state court. (*See* FAC at Exs. 1–11; Doc. No. 10.) In ruling on the pending motion to dismiss, the court will consider these attachments. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Certain written instruments attached to pleadings may be considered part of the pleading."); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

2

plaintiff sought an order requiring the County to approve the Snowdens' registration for a commercial cannabis cultivation permit or directing the Board to grant their request for a continuance of their appeal hearing to a date and time when their counsel would be available. (Doc. No. 13-2 at 25.)

On that same date, plaintiff was served a Notice of Hearing on a Notice of Violation, Administrative Citation, Order to Abate. (FAC at ¶ 20; *see also id.* at Ex. 7.) That notice informed plaintiff that "unlawful cannabis cultivation exists on the [Property]," which "constitute[es] a public nuisance," and directed plaintiff to "destroy all unlawfully cultivated plants on the premises." (FAC at 30.) The notice also informed plaintiff of a September 29, 2017 public hearing "to determine whether or not a nuisance exist[ed] upon [the] [P]roperty" before Calaveras County Code Compliance ("Code Compliance"). (*Id.*)

On September 26, 2017, plaintiff filed objections to the September 13, 2017 notice of violation. (*Id.* at ¶ 22; *see also id.* at Ex. 9.) In her objections, plaintiff informed Code Compliance of her then-pending petition for writ of mandate before the superior court and stated various objections to the notice of violation, including that she had complied with the registration requirements for a permit to commercially cultivate marijuana. (*Id.* at 41–42.) On September 29, 2017, the noticed public hearing on the notice of violation was held, the Snowdens appeared with their counsel and requested a stay pending the outcome of their petition before the superior court, and the matter was taken under submission. (*Id.* at ¶ 22.) Later that same day, the County issued "orders after hearing" and imposed fines, finding that "the nuisance continue[d] to exist" and directing the enforcing officer to abate or cause to be abated the marijuana plants at the Property. (*Id.* at ¶ 23; *see also id.* at Ex. 10.)

On October 2, 2017, the Calaveras County Sheriff's Department (the "Sheriff's Department") abated over four hundred marijuana plants on the Property. (*Id.* at ¶ 24.) Plaintiff alleges that neither she nor her attorney were given any notice that a decision on the notice of violation had been rendered. (*Id.*) On December 15, 2017, Code Compliance recorded a Notice of Nuisance Abatement Lien in the amount of $5,606.25 plus costs which might thereafter become due. (*Id.* at ¶ 25; *see also id.* at Ex. 12.)

On December 8, 2017, the superior court issued a ruling granting plaintiff's petition for writ of mandate in part. (*Id.* at ¶ 26; *see also* Doc. No. 10 at 10.) The court noted that:

> While petitioners express that they seek to have this Court conduct a de novo determination of the validity of the Board's denial of their permit application and/or the validity of the ordinance itself, the Court interprets the core issue of the petition for writ of mandate as the due process argument related to the denial of their request for a continuance of their appeal hearing due to the unavailability of their counsel.

(Doc. No. 10 at 10.) The superior court noted that it would have granted the Snowdens' continuance request pursuant to its local rules and directed the Board to reschedule the Snowdens' appeal hearing. (*Id.*) Plaintiff alleges that this "[r]uling was moot" because the County "had already acted without due process on two occasions and succeeded in destroying over 400 marijuana plants." (FAC at ¶ 26.)

On November 5, 2018, plaintiff filed a complaint against defendants seeking "damages for breach of procedural due process" in the superior court. (Doc. No. 1-1 at 2.) On November 16, 2018, defendants removed the action to this federal court based on federal question jurisdiction. (*See* Doc. No. 1). On December 21, 2018, plaintiff filed her FAC, asserting two causes of action. (Doc. No. 9.) First, she asserts a due process claim pursuant to 42 U.S.C. § 1983 based on (1) the Board denying her denying her the right to have her counsel present at her appeal hearing, (2) the County failing to serve her with the abatement order prior to abating her marijuana plants and thereafter placing a lien on the Property, and (3) the County issuing the abatement order while her petition for writ was pending before the superior court. Second, plaintiff asserts a state law conversion claim based on the County's decision to abate her marijuana plants. (*Id.* at ¶¶ 30, 31, 32).

On January 25, 2019, defendants filed the pending motion to dismiss the FAC. (Doc. No. 13.) On April 29, 2019, plaintiff filed her opposition to the motion, and on April 30, 2019, defendants filed their reply thereto. (Doc. Nos. 18, 19.)

**LEGAL STANDARD**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.

1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. *See also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## ANALYSIS

**A.     The *Rooker-Feldman* Doctrine is Not Applicable to Plaintiff's First Cause of Action.**

Defendants first move to dismiss plaintiff's federal cause of action, arguing that this court lacks subject matter jurisdiction over the action under the *Rooker–Feldman* doctrine. "The *Rooker–Feldman* doctrine has evolved from the two Supreme Court cases from which its name is derived." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004) (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*,

460 U.S. 462 (1983)). "*Rooker–Feldman* prohibits a federal district court from exercising subject matter jurisdiction over a suit that is a de facto appeal from a state court judgment." *Id.*

> If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker–Feldman* bars subject matter jurisdiction in federal district court. If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker–Feldman* does not bar jurisdiction. If there is simultaneously pending federal and state court litigation between the two parties dealing with the same or related issues, the federal district court in some circumstances may abstain or stay proceedings; or if there has been state court litigation that has already gone to judgment, the federal suit may be claim-precluded.

*Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003).

Defendants argue that, because the September 29, 2017 abatement order informed plaintiff of her right to challenge the order by filing a writ of mandate in the superior court pursuant to California Code of Civil Procedure §§ 1094.5 and 1094.6, and because plaintiff failed to timely file such a writ, the abatement order constitutes a final state court judgment for the purposes of applying the *Rooker-Feldman* doctrine. (Doc. No. 13-1 at 16.; *see also* FAC at Ex. 10.) Defendant points out that plaintiff did file an untimely challenge[2] to the September 29, 2017

---

[2] Defendants request that the court take judicial notice of plaintiff's untimely challenge and the superior court's February 6, 2018 order denying that challenge as well as three other documents relating to plaintiff's claims presented to county officials and the superior court which are similar to those raised by plaintiff in this action. (Doc. Nos. 13-2, Exs. 1–5.) Ordinarily, the court considers only the complaint and attached documents in deciding a motion to dismiss; however, the court may also take judicial notice of matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001). Pursuant to the Federal Rule of Evidence 201(b), a court may "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." A court may therefore take judicial notice of documents filed in related state court actions. *See Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998) (taking judicial notice of court filings in a state court case where the same plaintiff asserted similar and related claims). The exhibits that are the subject of defendants' request for judicial notice relate to plaintiff's claims presented to county officials and the superior court which are similar to those raised in this action. Accordingly, the court grants defendants' request for judicial notice. *See U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (taking judicial notice of proceedings in other courts where those proceedings have a "direct relation to matters at issue") (internal quotation marks and citation omitted).

abatement order in the superior court on January 3, 2018 seeking to vacate that abatement order. (Doc. No. 13-1 at 16.) The superior court denied this challenge, noting that "the 90 day statute of limitations established by Code of Civil Procedure Section 1094.6 for an administrative writ of mandate ended prior to the filing of the instant motion." (Doc. No. 13-2 at 19.) Because plaintiff never appealed the superior court's decision denying her challenge to the abatement order, defendants contend that a final state court judgment was entered in the matter, and that plaintiff is now seeking to relitigate issues proceedings here in federal court that are inextricably intertwined with those already resolved in state court. (Doc. No. 13-1 at 17–18); *see also Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003) ("If claims raised in the federal court action are 'inextricably intertwined' with the state court's decision such that the adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules, then the federal complaint must be dismissed for lack of subject matter jurisdiction [under the *Rooker-Feldman* doctrine]."). Accordingly, defendants argue that plaintiff's federal claim is barred by the *Rooker-Feldman* doctrine. (*Id.*) Defendants arguments in this regard are not persuasive.

The *Rooker-Feldman* doctrine "has no application to judicial review of executive action, including determinations made by a state administrative agency." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 644 n.3 (2002); *see also S. California Edison Co. v. Lynch*, 307 F.3d 794, 805 (9th Cir.) ("The *Rooker–Feldman* doctrine does not apply to the actions of the [California Public Utilities] Commission because it is a state administrative agency, not a court. The primary statute from which the *Rooker–Feldman* doctrine has been drawn—28 U.S.C. § 1257—does not, by its terms, describe state administrative decisions."), *modified,* 307 F.3d 943 (9th Cir. 2002), *and certified question answered sub nom. S. California Edison Co. v. Peevey*, 31 Cal. 4th 781 (2003). Here, the abatement order was issued by the County's Code Compliance department, not a state court. Accordingly, the court finds that *Rooker-Feldman* doctrine is inapplicable. The facts that (1) plaintiff did not timely challenge the abatement order in the superior court and (2) the superior court denied plaintiff's untimely challenge to the abatement order does not affect the court's analysis in this regard. "[T]he Supreme Court [has] clarified that

the *Rooker–Feldman* doctrine is only operative where a federal suit is initiated after state court proceedings have ended . . . . Proceedings end for *Rooker–Feldman* purposes when the state courts finally resolve *the issue* that the federal court plaintiff seeks to relitigate in a federal forum, even if other issues remain pending at the state level." *Mothershed v. Justices of Supreme Court*, 410 F.3d 602, 604 n.1 (9th Cir. 2005) (emphasis added), *as amended on denial of reh'g* (July 21, 2005), *opinion amended on denial of reh'g,* No. 03-16878, 2005 WL 1692466 (9th Cir. July 21, 2005). Here, the February 6, 2018 superior court order denying plaintiff's challenge to the September 29, 2017 abatement order as untimely did not resolve *the issues* plaintiff raises in her federal cause of action before this court. Rather, that court order merely rejected the challenge as untimely filed and did not analyze plaintiff's contentions on the merits. Defendants do not contend that the superior court addressed the challenge on its merits, nor have they provided any authority that such an order can serve to bar this action under the *Rooker-Feldman* doctrine.

Accordingly, the court will deny defendants' motion to the extent it is based on the argument that this court lacks subject matter jurisdiction over plaintiff's federal cause of action pursuant to the *Rooker-Feldman* doctrine. *See Welchen v. County of Sacramento*, No. 2:16-cv-00185-TLN-KJN, 2016 WL 5930563, at *10 (E.D. Cal. Oct. 11, 2016) ("[S]ince it is Defendants' burden at the motion to dismiss juncture, the Court cannot find that Defendants' motion is meritorious.").

**B.     Plaintiff's Federal Due Process Cause of Action is Barred Pursuant to the Full Faith and Credit Act, 28. U.S.C. § 1738.**

Next, defendants argue that plaintiff's first cause of action is barred pursuant to the Full Faith and Credit Act, 28 U.S.C. § 1738. (Doc. No. 13-1 at 18–19.) The court agrees.

"Title 28 U.S.C. § 1738 requires that [federal courts] give the same preclusive effect to state court judgments as they would be given in the state in which they were rendered." *Miller v. Cty. of Santa Cruz*, 39 F.3d 1030, 1032 (9th Cir. 1994) (citing *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985)). Although, "[s]ection 1738 does not govern cases involving unreviewed decisions of a state administrative hearing board or commission[,] . . . as a matter of federal common law, federal courts give preclusive effect to the findings of state

administrative tribunals in subsequent actions under § 1983." *Id.* (citing *Elliot*, 487 U.S. at 797–99); *see also Plaine v. McCabe*, 797 F.2d 713, 719 (9th Cir. 1986) ("When an administrative proceeding meets the requirements set forth in [*United States v. Utah Construction*, 384 U.S. 394 (1966)], it may rise to the level of a 'judicial proceeding' entitled to preclusive effect by section 1738."). "Thus, the threshold inquiry for a court deciding whether to give preclusive effect to a state administrative adjudication, is to determine whether the state administrative proceeding was conducted with sufficient safeguards to be equated with a state court judgment." *Plaine*, 797 F.2d at 719. "When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose." *Utah Construction*, 384 U.S. at 422; *see also White v. City of Pasadena*, 671 F.3d 918, 927 (9th Cir. 2012) ("Under California law, a prior administrative proceeding, if upheld on review (or not reviewed at all), will be binding in later civil actions to the same extent as a state court decision if the administrative proceeding possessed the requisite judicial character.") (citation and internal quotation marks omitted). "However, there can be no indiscriminate presumption of judicial adequacy of state administrative proceedings. The federal court must carefully review the state administrative proceeding to ensure that, at a minimum, it meets the state's own criteria necessary to require a court of that state to give preclusive effect to the state agency's decisions." *Plaine*, 797 F.2d at 719.

The California Supreme Court has "set out general principles which [the court] can use for guidance in this case."[3] *Id.* at 720 (citing to *People v. Sims*, 32 Cal. 3d 468 (1982)). "*Sims* established a two part test for determining whether administrative decisions will be given collateral estoppel effect. First, it adopted the standard the United States Supreme Court had established *in Utah Construction*. Second, the Court looked to whether the traditional criteria for applying collateral estoppel were satisfied on the facts of the case." *Id.* (internal citations omitted). "California courts will allow collateral estoppel to bar relitigation of an issue decided at

---

[3] It does not appear that the California Supreme Court has addressed the effect to be given to a decision of a county's code compliance division.

9

a previous proceeding if: '(1) the issue necessarily decided at the previous [proceeding] is identical to the one which is sought to be relitigated; (2) the previous [proceeding] resulted in a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior [proceeding].'" *Id.* (quoting *Sims*, 32 Cal. 3d at 484).

Here, "both the standard for giving collateral estoppel effect to administrative judgments and the traditional criteria for applying collateral estoppel are present." *Id.* The September 29, 2017 abatement hearing "was conducted similarly to a court proceeding." *Id.* The September 13, 2017 notice of abatement informed plaintiff that she could argue that her cultivation of marijuana plants was lawful at the September 29, 2017 hearing. (FAC at 30.) The notice informed plaintiff that she would be allowed to present photos, documentary evidence, oral or written arguments, an appeal letter, a brief, or other evidence for the hearing officer's review. (*Id.* at 34.) Indeed, prior to the hearing, plaintiff submitted verified objections to the notice of violation, informing the County of her then-pending writ before the superior court, and contending that she registered with the County to commercially cultivate marijuana and "believe[d] that she complied with the requirements by attempting to register and pay [a fee] . . . as required by the [Emergency] Ordinance." (FAC at 41–43.) Moreover, the Snowdens appeared with their counsel at the abatement hearing and raised their arguments alleging a denial of due process. (*Id.* at ¶ 22; *see also id.* at 45.) That hearing therefore provided [plaintiff] with an adequate opportunity to litigate [her] . . . claims." *Plaine*, 797 F.2d at 720. Moreover, after the hearing, plaintiff received a written order setting forth the hearing officer's reasons for ordering the abatement of the marijuana plants on the Property, namely that plaintiff did not have a permit to cultivate marijuana commercially. (*Id.* at 45–49.) The order after hearing "was adjudicatory in nature, requiring the application of [the Calaveras County Code and California's Government Code] . . . to a specific set of facts." *Plaine*, 797 F.2d at 720. Accordingly, the court concludes that the September 29, 2017 hearing, on the notice of abatement issued to plaintiff, before the County's Code Compliance division and the subsequent written order "meet[] the *Utah Construction* criteria for giving effect to the judgment of an administrative hearing." *Id.*

/////

The September 29, 2017 order after hearing "also meets the traditional requirements for applying collateral estoppel." *Id.* First, plaintiff was a party at the code compliance hearing. Second, the issue necessarily decided at the September 29, 2017 hearing is identical to the issue that plaintiff is seeking to relitigate in this court, namely that abatement of the marijuana plants was not appropriate given that plaintiff's petition for writ of mandate was still pending before the superior court at the time of the code compliance hearing. The order after hearing noted that this argument was considered by the hearing officer and rejected. (FAC at 45–46.) Finally, the hearing officer's determination was final. Although the order after hearing informed plaintiff of her right to challenge the order by filing a writ of mandate in the superior court, plaintiff chose not to do so in a timely fashion and the decision became binding. *See Plaine*, 797 F.2d at 720–21 (finding that the decision of the California Corporations Commission was final for collateral estoppel purposes where the appellant could have sought state court review of the decision pursuant to California Code of Civil Procedure § 1094.5 but did not).

Plaintiff contends that the abatement order is not a final judgment because the superior court, in granting her initial petition for writ of mandate in part, reversed the Board's denial of her appeal of the Planning Commission denial of her application for a permit to commercially cultivate marijuana. (Doc. No. 18 at 8–9.) Plaintiff contends that the abatement order "was [therefore] invalid because the premise upon which the hearing was held was reversed by the Superior Court, a circumstance the County was fully aware could happen." (*Id.* at 9.) Plaintiff, however, mischaracterizes the superior court's order and misinterprets the scope and purpose of the abatement order. The superior court merely "directed the Board . . . to grant petitioners' request for a continuance and schedule petitioners' appeal hearing cooperatively with their counsel to a date and time when counsel is available." (Doc. No. 10 at 10.) Thus, plaintiff's repeated assertion that "the premise upon which the abatement proceeding was held had been *reversed* by the Superior Court," (Doc. No. 18 at 13 (emphasis added); *see also id.* at 16, 20), is without merit. Moreover, as the superior court noted in denying plaintiff's untimely challenge to the abatement order, the issues implicated by plaintiff's writ petition were independent of and distinct from the issues addressed in the abatement order, which was not concerned with whether

plaintiff applied for a permit to commercially cultivate marijuana, but rather addressed whether a nuisance existed on the Property that needed to be abated. As the superior court pointed out, "[a]lthough the original petition and the proposed [challenge] involve cannabis cultivation, the core of the contentions are directed at different government agencies that involve different actions by each of them." (Doc. No. 13-2 at 19.) Plaintiff's first cause of action is therefore barred pursuant to the Full Faith and Credit Act.

The court is aware that plaintiff's due process claim is also based on the Board denying her motion to continue the appeal hearing to a date when her counsel was available as well as the County abating her marijuana plants without providing her proper notice of the abatement order. The first basis, however, has been mooted by the superior court's order directing the Board to reschedule the Snowden's appeal hearing for a date convenient to their counsel.[4] Plaintiff also alleges that the County failed to properly notify her of the abatement order. The court finds, however, that this claim is barred under the *res judicata* doctrine because it emanates from the same "primary right" that plaintiff asserted at the abatement hearing and the order issued after that abatement hearing was never challenged by plaintiff in state court. *San Remo Hotel, L.P. v. City & Cnty. of San Francisco*, 545 U.S. 323, 336 (2005) (the Full Faith and Credit Act "has long been understood to encompass the doctrines of *res judicata*, or 'claim preclusion,' and collateral estoppel, or 'issue preclusion'"); *see also Eichman v. Fotomat Corp.*, 147 Cal. App. 3d 1170, 1174 (1983) ("Whenever a judgment in one action is raised as a bar to a later action under the doctrine of *res judicata*, the key issue is whether the same cause of action is involved in both suits. California law approaches the issue by focusing on the 'primary right' at stake: if two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery."). Here, plaintiff's concern regarding the notice of abatement involves the same alleged wrong by

---

[4] The court is skeptical of plaintiff's ability to allege a due process violation based on the Board's denial of her motion to continue as she has not alleged that she had a right to have her counsel present at the appeal hearing and the court is aware of no authority so holding.

12

defendant—that plaintiff's marijuana plants were wrongfully abated—and she could have raised these concerns in a petition for a writ of mandate before the superior court challenging the abatement order, but chose not to do so in a timely fashion. Accordingly, to the extent it is based on the alleged lack of notice of abatement, plaintiff's due process claim is also barred pursuant to Full Faith and Credit Act.[5]

### C.    Plaintiff's State Law Conversion Cause of Action Fails to State a Cognizable Claim.

Finally, in addition to the federal claims addressed above, the FAC asserts a state law conversion cause of action. A district court may decline to exercise supplemental jurisdiction over state law claims if the district court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). The court's discretion to decline jurisdiction over state law claims is informed by the values of judicial economy, fairness, convenience, and comity. *Acri v. Varian Associates, Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (*en banc*). Although the usual case in which all federal law claims are eliminated points toward declining to exercise jurisdiction over the remaining state law claims, *id.* at 1001, here consideration of judicial economy and convenience point toward exercising supplemental jurisdiction because plaintiff's state law claim is frivolous and the claim need not be remanded to state court in order to be resolved.

The FAC does not plausibly allege a conversion claim based on the County abating her marijuana plants because plaintiff has not alleged therein that she had a legal right to possess those marijuana plants. Plaintiff alleges merely that she went to a Planning Department meeting on June 30, 2016 to register for a permit and that she wrote her name and contact information on a piece of paper. Plaintiff specifically does not allege that she submitted a registration form or

---

[5] The court notes that plaintiff's claim that she was not given notice of the abatement order prior to the marijuana plants being abated must be dismissed for failure to state a claim as well. The County's inspection warrant authorizing abatement, which was signed by a judge of the superior court and attached to the abatement order: (1) commands Code Compliance to abate the unlawful cannabis that was cultivating at the Property pursuant to the County code and chapter; (2) notes that the abatement may occur "in the absence of an owner or occupant"; and (3) notes that the "[*f*]*ailure to obtain prior consent is justified and this Inspection Warrant may be executed without prior notice*." (FAC at 49) (emphasis added). Accordingly, plaintiff cannot state a cognizable claim by alleging she was denied due process as a result of the County's failure to notify her of their abatement action. The County was under no such obligation and she had no right to such notice.

paid any fees in connection therewith to any County employee. Plaintiff does allege that on April 24, 2017, "[a]fter months went by with no contact from the County," Steven contacted the Planning Department to inquire about "why their application had not been processed." (FAC at ¶¶ 12, 13.) From that time until August 22, 2017, the Snowdens and the County went back and forth over whether the Snowdens had properly registered or applied for a permit. On September 13, 2017, the County served plaintiff with a notice of violation after one of its investigators concluded that the Snowdens were cultivating marijuana on the Property without a permit. (*Id.* at ¶ 20). And on October 2, 2017, after an abatement hearing, the County ordered the marijuana plants located on the property to be abated. (*Id.* at ¶ 24.)

Even if the court were to assume that plaintiff submitted an application for a permit to commercially cultivate marijuana on June 30, 2016, as evidenced by the "Medical Cannabis Cultivation Registration Form" that plaintiff has attached to her FAC, "[f]illing out th[at] form [d]id not in any way guarantee that [her] . . . Registration w[ould] be accepted." (FAC at 12.) Moreover, plaintiff admits that no one from the County contacted her about her application for almost a year and, in fact, Steve went to the County to inquire about why their application had not been processed after that passage of considerable time. Thus, the Snowdens knew that their application for a permit had not been processed and yet, as demonstrated by the FAC's own allegations, they were nevertheless cultivating marijuana plants, which the County thereafter ordered abated. The FAC contains no allegations that the Snowdens had any legal authorization to cultivate the marijuana plants that were abated.

Accordingly, plaintiff's state law conversion claim fails to state a claim because she has not alleged facts that, if proven, would establish that she "had a legal right to possess the seized marijuana" and that failure "[i]s fatal to [her] common law, statutory and constitutional claims for interference with [her] property rights." *Littlefield v. Cty. of Humboldt*, 218 Cal. App. 4th 243, 257 (2013); *see also Cty. of Butte v. Superior Court*, 175 Cal. App. 4th 729, 744 (2009) ("But neither tort liability nor due process rights arise from the seizure or destruction of contraband per se . . . . As for tort liability, it has long been the rule that a conversion action will not lie for

/////

14

property which can only be possessed in violation of law.") (internal quotation marks and citation omitted).

**D.      Granting Leave to Amend Would be Futile**

The Federal Rules of Civil Procedure provide that "[t]he court should freely give leave [to amend pleadings] when justice so requires." Fed. R. Civ. P. 15(a). However, leave to amend need not be granted when the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile. *See AmerisourceBergen Corp. v. Dialysist W. Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (citing *Bowles v. Reade*, 198 F.3d 752, 757 (9th Cir. 1999)). Here, amendment is futile because plaintiff's claims are either barred by the Full Faith and Credit Act or contradicted by the allegations of the FAC itself and fail to state a claim. *See, e.g., United States v. Corinthian Colls.*, 655 F.3d 984, 955 (9th Cir. 2011) ("Amendment is proper 'if the deficiencies can be cured with additional allegations that are 'consistent with the challenged pleading' and that do not contradict the allegations in the original complaint.'") (citing *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296–97 (9th Cir. 1990)). Accordingly, plaintiff's FAC will be dismissed with prejudice.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss (Doc. No. 13) is granted with prejudice and without leave to amend.

IT IS SO ORDERED.

Dated:    **September 30, 2019**          _____
                                          UNITED STATES DISTRICT JUDGE